EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:26-CV-26005-RUIZ

HSA PGH, LLC d/b/a Palmetto General Hospital; HSA CGH, LLC d/b/a Coral Gables Hospital; HSA FMC, LLC d/b/a Florida Medical Center; HSA NSMC, LLC d/b/a North Shore Medical Center; HSA HH, LLC d/b/a Hialeah Hospital; HSA GLENWOOD, LLC d/b/a Glenwood Regional Medical Center; HSA PORT ARTHUR, LLC d/b/a Medical Center of Southeast Texas; and HSA ST. JOSEPH, LLC d/b/a St. Joseph Medical Center,

Plaintiffs,

vs.

UMR, INC.,

Defendant.
_______________________________________/

**SECOND AMENDED COMPLAINT**

Plaintiffs, HSA PGH, LLC d/b/a Palmetto General Hospital; HSA CGH, LLC d/b/a Coral Gables Hospital; HSA FMC, LLC d/b/a Florida Medical Center; HSA NSMC, LLC d/b/a North Shore Medical Center; HSA HH, LLC d/b/a Hialeah Hospital; HSA GLENWOOD, LLC d/b/a Glenwood Regional Medical Center; HSA PORT ARTHUR, LLC d/b/a Medical Center of Southeast Texas; and HSA ST. JOSEPH, LLC d/b/a St. Joseph Medical Center, file this Second Amended Complaint against Defendant UMR, Inc. and allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs operate hospitals in Florida, Texas, and Louisiana. They provide self-funded health benefits to their employees and their employees' families (collectively, the "HSA Hospital Plaintiffs").

2. Defendant UMR administered medical claims for the HSA Hospital Plaintiffs and also administered claims for other hospitals associated with American Healthcare Systems Corp., Inc. ("AHS" and the "AHS Hospitals"). Although the hospital groups were related, UMR maintained and accounted for their claims funding separately.

3. UMR maintained separate custodial accounts for claims funding. One was a checking account used for HSA claims and identified in payment records as "UMR Inc. C/F Pmt Claims HSA Corp," account ending in 5312 (the "HSA Custodial Account").

4. UMR maintained separate custodial accounts for the AHS Hospitals and separately tracked the funding, claims payments, and balances associated with those accounts. UMR itself referred to them as "all 4 custodial accounts."

5. During 2026, ownership and control of AHS and HSA were disputed. UMR was aware of that dispute and continued to maintain separate claims-funding accounts and balances for HSA and the AHS Hospitals.

6. In June 2026, UMR notified AHS that it was terminating claims-administration services because of underfunded claims and unpaid administrative fees. UMR based the termination on an unsigned Administrative Services Agreement identifying UMR and AHS as the parties. By late July, however, UMR's own records showed that the HSA claims-funding balance was positive while separately identifying funding deficiencies associated with certain AHS Hospital accounts.

7. As the termination date approached, medical claims incurred by the HSA Hospital Plaintiffs before termination still required processing afterward (the "HSA Run-Out Claims"). It is customary and expected in claims administration for the outgoing administrator to process claims incurred before termination but submitted or adjudicated afterward, allowing for an orderly transition to a successor administrator.

8. UMR, however, stated that it would not provide run-out services unless the separately maintained AHS Hospital accounts were also fully funded. UMR also proposed placing additional run-out finding into a central account from which claims associated with both HSA and AHS Hospitals could be paid. The HSA Hospital Plaintiffs did not agree to UMR's proposed use of additional of HSA funding for AHS claims. UMR ultimately did not provide run-out services for the HSA Run-Out Claims.

9. After UMR declined to provide run-out services, the HSA Hospital Plaintiffs requested reconciliation and return of the claims-funding money remaining after payment of claims, fees, and other properly chargeable amounts. UMR has not returned the full residual amount or provided a complete accounting establishing the disposition and present status of the HSA claims funding.

10. Based on the information presently available, the HSA Hospital Plaintiffs estimate that approximately $3.53 million remains attributable to them after HSA claims, fees, and other properly chargeable amounts, subject to a complete accounting..

11. UMR's continued withholding of those funds deprives the HSA Hospital Plaintiffs of money available to process and pay medical claims incurred by their employees and their employees' families, requires them to provide replacement funding from other sources.. Delayed or unpaid medical claims also expose the HSA Hospital Plaintiffs to employee and provider complaints,

collection disputes, additional administrative costs and potential liability, disruption of their relationships with employees and medical providers, and resulting reputational harm. The HSA Hospital Plaintiffs seek recovery of all amounts to which they are entitled, damages caused by UMR's conduct, and an accounting of the claims-funding money placed in UMR's custody.

## PARTIES

12. Plaintiff HSA PGH, LLC d/b/a Palmetto General Hospital is a Florida limited liability company that operates Palmetto General Hospital in Miami-Dade County, Florida.

13. Plaintiff HSA CGH, LLC d/b/a Coral Gables Hospital is a Florida limited liability company that operates Coral Gables Hospital in Miami-Dade County, Florida.

14. Plaintiff HSA FMC, LLC d/b/a Florida Medical Center is a Florida limited liability company that operates Florida Medical Center in Broward County, Florida.

15. Plaintiff HSA NSMC, LLC d/b/a North Shore Medical Center is a Florida limited liability company that operates North Shore Medical Center in Miami-Dade County, Florida.

16. Plaintiff HSA HH, LLC d/b/a Hialeah Hospital is a Florida limited liability company that operates Hialeah Hospital in Miami-Dade County, Florida.

17. Plaintiff HSA GLENWOOD, LLC d/b/a Glenwood Regional Medical Center is a Louisiana limited liability company that operates Glenwood Regional Medical Center in Louisiana.

18. Plaintiff HSA PORT ARTHUR, LLC d/b/a Medical Center of Southeast Texas is a Texas limited liability company that operates Medical Center of Southeast Texas in Texas.

19. Plaintiff HSA ST. JOSEPH, LLC d/b/a St. Joseph Medical Center is a Texas limited liability company that operates St. Joseph Medical Center in Texas.

20. Defendant UMR, Inc. provides third-party claims-administration services and administered medical claims for the HSA Hospital Plaintiffs.

## JURISDICTION, VENUE, AND PROCEDURAL HISTORY

21. The HSA Hospital Plaintiffs commenced this action on August 12, 2026, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

22. The original action sought emergency relief requiring UMR to continue processing the HSA Hospital Plaintiffs' Run-Out Claims. After UMR declined to provide run-out processing, the dispute also concerned UMR's refusal to return the HSA claims-funding money remaining after authorized claims payments and other charges. The HSA Hospital Plaintiffs amended their state-court complaint on August 26, 2026, to seek return of those funds.

23. UMR removed the action to this Court on August 31, 2026, invoking diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446.

24. The amount in controversy exceeds $75,000, exclusive of interest and costs.

25. Venue is proper in this District under 28 U.S.C. § 1441(a) because this action was removed from the Circuit Court in Miami-Dade County, Florida.

## FACTUAL ALLEGATIONS

### A. UMR Maintained a Separate HSA Custodial Account for the HSA Hospital Plaintiffs

26. The HSA Hospital Plaintiffs provide self-funded medical benefits for their employees and their employees' families. Claims funding for those benefits was periodically transferred to UMR and designated for medical claims associated with the HSA Hospital Plaintiffs.

27. UMR accepted those designated claims-funding payments, attributed them to HSA claims, and used the funds to pay medical claims associated with the HSA Hospital Plaintiffs.

28. UMR also administered medical claims associated with AHS and the AHS Hospitals.

29. UMR maintained a checking account identified in payment records as "UMR Inc. C/F Pmt Claims HSA Corp," account ending in 5312, for HSA-designated claims funding (the "HSA

Custodial Account”). UMR separately maintained custodial accounts for claims funding associated with the AHS Hospitals.

30. Claims-funding payments designated for HSA were repeatedly deposited into the HSA Custodial Account. UMR separately received and applied claims funding designated for the AHS Hospitals through their respective custodial accounts.

31. UMR separately tracked the funding received, claims paid, adjustments made, and resulting balances associated with the HSA Custodial Account and the AHS Hospital custodial accounts. UMR referred to them collectively as “all 4 custodial accounts.”

32. UMR maintained the bank and claims-payment records necessary to identify the amounts credited to each custodial account, the amounts disbursed or applied from each account, and the resulting balance associated with each account.

**B. <u>AHS Announces Termination</u>**

33. During 2026, ownership and control of AHS and HSA were disputed. UMR was aware of that dispute.

34. UMR continued to maintain separate claims-funding balances for HSA and the AHS Hospitals during that period.

35. On June 1, 2026, UMR issued a termination notice to AHS citing claims-funding deficiencies and unpaid administrative fees. UMR stated that it would terminate claims-administration services effective July 1, 2026.

36. UMR based the termination on an unsigned Administrative Services Agreement between UMR and AHS (the “ASA”). The ASA identifies UMR and AHS as the “Parties” and AHS as the “Customer.” The HSA Hospital Plaintiffs are not identified as Parties to the ASA and did not

sign it. The ASA also states that it confers no rights, remedies, obligations, or liabilities on persons other than the Parties and their permitted successors or assigns.

37. On July 29, 2026, and after the termination notice, UMR circulated its current funding balances as of July 27 and reported HSA as having a positive claims-funding balance of $2,062,342.31 and separately identified amounts due for the AHS Hospitals.

38. UMR's accounting treated HSA and the AHS Hospitals as separate funding balances. UMR also tracked transfers and proposed reallocations between those balances rather than treating all claims funding as a single undifferentiated pool.

### C. UMR Conditioned Run-Out Services on Funding the AHS Hospital Accounts

39. As the August 1, 2026 termination date set by UMR approached, the HSA Hospital Plaintiffs needed administration of the HSA Run-Out Claims.

40. Run-out services are the customary means by which a third-party administrator continues to process claims incurred before termination after its claims-administration services otherwise end, allowing for an orderly transition to a successor administrator. Medical claims for care already provided continue to be submitted and require adjudication and payment after the termination date.

41. Despite UMR's own records showing the HSA claims-funding balance as overfunded, UMR took the position that it would not provide run-out services for the HSA Hospital Plaintiffs unless the separate AHS Hospital accounts were also fully funded.

42. UMR stated that if those AHS Hospital accounts remained underfunded, it would not provide run-out services for the HSA Run-Out Claims regardless of the amount deposited for HSA.

43. In connection with proposed run-out services, UMR proposed a materially different funding structure from the separate custodial-account structure it had previously maintained. UMR

proposed that additional run-out funding be deposited into a single central account from which claims associated with both HSA and the AHS Hospitals would be paid, while maintaining separate accounting records to track the amounts applied to each. That structure would have made HSA-provided funding available for payment of claims attributable to the AHS Hospitals and reduced the funding available for the HSA Hospital Plaintiffs' own Run-Out Claims.

44. The HSA Hospital Plaintiffs remained willing to provide additional funding for their own medical claims.

45. UMR conditioned continued processing of the HSA Hospital Plaintiffs' Run-Out Claims on a funding arrangement under which additional funding would be available to pay claims associated with both HSA and the AHS Hospitals, while separate accounting records tracked utilization by entity.

46. The HSA Hospital Plaintiffs did not agree to UMR's proposed use of additional HSA funding across both HSA and AHS claims.

47. While the parties continued discussing the conditions for continued claims processing, on August 6, 2026, HSA PGH transferred an additional $2,000,000 from its depository account to UMR's existing HSA Custodial Account ending in 5312, and UMR received the transfer. The payment record identifies the beneficiary as "UMR Inc. C/F Pmt Claims HSA Corp."

48. The August 6 transfer did not resolve the parties' disagreement over UMR's proposed conditions for continued processing. The parties did not reach agreement on UMR's proposed run-out conditions, including the proposed cross-group funding arrangement.

49. On August 14, 2026, UMR stated that the parties had not reached agreement on the proposed conditions for continued processing, treated termination as effective August 1, 2026, and stated that it would process HSA Run-Out process no further HSA claims.

**D. UMR Refused to Return and Account for the Remaining HSA Claims Funding**

50. After UMR refused to provide run-out services for the HSA Run-Out Claims, the HSA Hospital Plaintiffs requested reconciliation and return of the claims-funding money remaining after payment of claims, fees, and other amounts properly chargeable against the HSA Custodial Account.

51. UMR refused to return the full remaining balance and has not provided the HSA Hospital Plaintiffs with a complete reconciliation showing the disposition and present status of the HSA claims funding after claims administration ended.

52. Based on the information presently available, the HSA Hospital Plaintiffs estimate that approximately $3,531,417.05 remains attributable to them after claims, fees, and other amounts properly chargeable to HSA, subject to a complete accounting. The precise amount and present disposition of that funding are subject to a complete accounting of the deposits, claims payments, transfers, charges, adjustments, and post-termination transactions associated with the HSA Custodial Account.

53. UMR maintains the bank, claims-payment, and internal accounting records necessary to determine the complete disposition of the HSA claims funding, including deposits, claims payments, fees, transfers, reallocations, reversals, adjustments, outstanding items, and any residual balance.

54. The HSA Hospital Plaintiffs seek an accounting and recovery of all HSA-attributable claims funding remaining after claims, fees, and other amounts properly chargeable against the HSA Custodial Account.

### E. UMR's Duties Concerning the HSA Claims Funding Exist Independently of the Plan and the ASA

55. The HSA Hospital Plaintiffs' claims concern money transferred to UMR for the specific purpose of funding medical claims incurred by their employees and their employees' families.

56. UMR accepted HSA-designated claims funding into the HSA Custodial Account, maintained and tracked that funding separately from the AHS Hospital accounts, and controlled its disbursement while administering HSA claims.

57. The HSA Hospital Plaintiffs do not seek payment of benefits under the Plan or challenge any determination concerning whether a particular medical claim was covered or payable under the Plan.

58. The HSA Hospital Plaintiffs do not seek to enforce any right created by the ASA between UMR and AHS. Their claims arise from UMR's receipt, custody, allocation, accounting for, and disposition of money designated for the HSA Hospital Plaintiffs' employee medical claims.

59. The duties asserted in this action concerning the custody, authorized disposition, accounting for, and return of that money do not depend upon enforcement of the ASA or resolution of any employee's entitlement to benefits under the Plan.

60. UMR's records can establish the complete disposition of the HSA claims funding and the amount, if any, remaining after claims, fees, and other authorized charges and transactions are accounted for.

## COUNT I
## BREACH OF FIDUCIARY DUTY

61. The HSA Hospital Plaintiffs incorporate paragraphs 1 through 61.

62. Each HSA Hospital Plaintiff asserts this Count with respect to HSA claims funding in which it has an ownership or superior possessory interest.

63. UMR accepted custody and control of money designated for the payment of medical claims associated with the HSA Hospital Plaintiffs. UMR maintained and tracked that funding through the HSA Custodial Account, controlled its disbursement after receipt, and maintained the records reflecting its receipt, use, allocation, and disposition.

64. By accepting custody and control of money entrusted to it for those designated purposes, UMR assumed fiduciary duties concerning that money independent of the ASA between UMR and AHS.

65. Those duties included safeguarding the entrusted funds, applying them only for authorized purposes, accounting for their disposition, refraining from reallocating them contrary to the directions governing their use, and returning any residual balance once UMR no longer had an authorized basis to retain or use it.

66. UMR ceased providing claims-administration services for the HSA Hospital Plaintiffs and declined to provide run-out services for the HSA Run-Out Claims.

67. The HSA Hospital Plaintiffs thereafter requested reconciliation and return of the HSA claims funding remaining after payment of claims, fees, and other properly chargeable amounts.

68. UMR breached its fiduciary duties by refusing to return the full residual amount, failing to provide a complete accounting of the disposition and present status of the entrusted funds, and conditioning continued processing of HSA claims on a funding arrangement under which HSA-provided funding would be available for claims attributable to separately tracked AHS Hospitals despite the HSA Hospital Plaintiffs' objection..

69. UMR maintains the transaction-level records necessary to determine the full extent of the breaches, including records of deposits, claims payments, fees, transfers, reallocations, reversals, adjustments, outstanding items, and post-termination transactions.

70. As a direct and proximate result of UMR's breaches, the HSA Hospital Plaintiffs have been deprived of money to which they are entitled, have been required to provide replacement funding for employee medical claims, and have suffered damages in an amount to be established through UMR's accounting and discovery. UMR's conduct also disrupted the processing and payment of medical claims incurred by the HSA Hospital Plaintiffs' employees and their families and exposed the HSA Hospital Plaintiffs to employee and provider complaints, collection disputes, additional administrative costs and potential liability, disruption of their relationships with employees and medical providers, and resulting reputational harm.

71. Because UMR accepted and controlled the entrusted funds and possesses the records necessary to determine their disposition, the HSA Hospital Plaintiffs are entitled to an equitable accounting of all HSA-attributable claims funding received, disbursed, transferred, reallocated, charged, adjusted, retained, or otherwise disposed of by UMR.

**WHEREFORE**, the HSA Hospital Plaintiffs request judgment against UMR for compensatory damages; an equitable accounting; recovery of all HSA-attributable funds shown through that accounting to have been improperly retained, transferred, applied, or otherwise disposed of; prejudgment and post-judgment interest; and such other relief as the Court deems just and proper.

**COUNT II**
**<u>CONVERSION</u>**

72. The HSA Hospital Plaintiffs incorporate paragraphs 1 through 61.

73. Each HSA Hospital Plaintiff asserts this Count only with respect to HSA claims funding in which it has an ownership or superior right to immediate possession.

74. The property at issue consists of specifically identifiable claims-funding money deposited into and attributed to the HSA Custodial Account ending in 5312 for designated HSA claims-funding purposes.

75. UMR initially obtained possession of that money lawfully and used portions of it for the payment of HSA claims and other authorized charges.

76. UMR separately tracked the HSA claims-funding balance and distinguished it from the balances associated with the AHS Hospitals.

77. After UMR ceased claims administration and declined to provide run-out services, its authority to retain or use any residual HSA claims funding was limited to claims, fees, and other amounts properly chargeable against the HSA Custodial Account.

78. The HSA Hospital Plaintiffs requested reconciliation and return of the remaining HSA claims funding to which they were entitled.

79. UMR refused to return the full residual amount.

80. By continuing to exercise dominion and control over identifiable HSA claims funding after the HSA Hospital Plaintiffs became entitled to its return and demanded possession, UMR exercised dominion inconsistent with the HSA Hospital Plaintiffs' rights.

81. The precise amount converted is subject to UMR's accounting of claims payments, fees, transfers, reallocations, adjustments, and other properly chargeable transactions. Based on the information presently available, approximately $3,531,417.05 remains unreconciled and subject to return.

82. As a direct and proximate result of UMR's conversion, the HSA Hospital Plaintiffs have been deprived of the possession and use of funds to which they are entitled, have been required to provide replacement funding for employee medical claims, and have suffered damages. UMR's continued exercise of dominion and control over those funds also impaired the HSA Hospital Plaintiffs' ability to pay medical claims incurred by their employees and their families and exposed them to employee and provider complaints, collection disputes, additional administrative costs and potential liability, disruption of their relationships with employees and medical providers, and resulting reputational harm.

**WHEREFORE**, the HSA Hospital Plaintiffs request judgment against UMR for the value of the converted property established through the accounting and evidence, prejudgment and post-judgment interest, all other damages recoverable by law, and such other relief as the Court deems just and proper.

**COUNT III (IN THE ALTERNATIVE)**
**MONEY HAD AND RECEIVED / RESTITUTION**

83. The HSA Hospital Plaintiffs incorporate paragraphs 1 through 61.

84. This Count is pleaded in the alternative under Federal Rule of Civil Procedure 8(d). It does not depend upon any HSA Hospital Plaintiff being a party to, bound by, or entitled to enforce the ASA between UMR and AHS.

85. Claims-funding money was transferred to UMR and designated for medical claims associated with the HSA Hospital Plaintiffs.

86. UMR received and accepted that money, attributed it to HSA claims funding, controlled its disposition, and used portions of it to pay HSA claims and other authorized charges.

87. UMR received the benefit of possession and control of those funds and knew the purposes for which they had been provided.

88. UMR ceased providing claims-administration services for the HSA Hospital Plaintiffs and declined to provide run-out services for the HSA Run-Out Claims.

89. After deduction of claims, fees, and other amounts properly chargeable against the HSA Custodial Account, UMR has no equitable entitlement to retain any residual HSA claims funding for which it provided no corresponding claims payment, service, authorized offset, or other value.

90. The HSA Hospital Plaintiffs requested reconciliation and return of the residual funding. UMR has not returned the full amount or provided the accounting necessary to establish its complete disposition.

91. Under those circumstances, UMR has received or retained money that, in equity and good conscience, should be restored to the HSA Hospital Plaintiffs to the extent of their respective interests.

92. The precise amount subject to restitution will be established through UMR's accounting and discovery. Based on the information presently available, the HSA Hospital Plaintiffs estimate the residual at approximately $3,531,417.05, subject to a complete accounting.

**WHEREFORE**, the HSA Hospital Plaintiffs request judgment against UMR requiring restitution of all HSA-attributable claims funding that UMR has no lawful or equitable basis to retain, together with prejudgment and post-judgment interest and such other relief as the Court deems just and proper.

## COUNT IV
## DECLARATORY JUDGMENT

93. The HSA Hospital Plaintiffs incorporate paragraphs 1 through 61.

94. An actual controversy exists concerning the parties' respective rights in HSA-attributable claims funding received and controlled by UMR.

95. UMR maintained and accounted for HSA claims funding separately from the AHS Hospital accounts but later conditioned continued processing of HSA claims on a proposed funding structure under which additional funding would be available to pay claims associated with both HSA and the AHS Hospitals.

96. The HSA Hospital Plaintiffs dispute that UMR possesses any right to apply funds designated for their employee medical claims to separately tracked obligations of the AHS Hospitals without authorization.

97. UMR has ceased providing claims-administration and run-out services for the HSA Hospital Plaintiffs but has not returned or fully accounted for the residual HSA-attributable funding.

98. The HSA Hospital Plaintiffs therefore seek a declaration concerning their ownership or superior possessory rights in the residual HSA-attributable claims funding and UMR's authority, if any, to retain, transfer, reallocate, or apply that funding to obligations attributable to the AHS Hospitals.

**WHEREFORE**, the HSA Hospital Plaintiffs request a declaration of the parties' respective rights concerning the HSA-attributable claims funding and such further relief as the Court deems appropriate.

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, the HSA Hospital Plaintiffs respectfully request that the Court enter judgment in their favor and against UMR, Inc., and award:

a. Compensatory damages in an amount established by the evidence, including damages arising from the deprivation of HSA claims funding, replacement funding, additional administrative costs, and liabilities or losses caused by delayed or unpaid employee and family medical claims;

b. Restitution of all HSA-attributable claims funding that UMR received or retained and to which the HSA Hospital Plaintiffs are entitled;

c. An equitable accounting of all HSA-attributable claims funding received, held, disbursed, transferred, reallocated, charged, adjusted, reversed, retained, or otherwise disposed of by UMR, including all post-termination transactions;

d. Return or restoration of all amounts shown through the accounting and evidence to have been improperly retained, transferred, reallocated, applied to claims or obligations not attributable to the HSA Hospital Plaintiffs, or otherwise disposed of;

e. To the extent the accounting or discovery identifies specific funds or traceable proceeds in UMR's possession subject to the HSA Hospital Plaintiffs' proprietary rights, imposition of a constructive trust, equitable lien, or other appropriate proprietary relief over those funds or proceeds;

f. Preliminary and permanent injunctive relief necessary to preserve specifically identified HSA-attributable funds or traceable proceeds, prohibit their transfer, reallocation, dissipation, or application to claims or obligations not attributable to the HSA Hospital Plaintiffs pending final adjudication, and restore such funds or proceeds as warranted by the evidence;

g. A declaration of the parties' respective rights concerning HSA-attributable claims funding, including UMR's authority, if any, to retain any residual after HSA claims, fees, and other properly chargeable amounts are accounted for, and whether UMR may, absent authorization from the HSA Hospital Plaintiffs, transfer, reallocate, or apply HSA-attributable funding to claims or obligations not attributable to the HSA Hospital Plaintiffs;

h. Prejudgment and post-judgment interest;

i. Costs and any attorneys' fees authorized by law; and

j. Such other and further legal or equitable relief as the Court deems just and proper.

**JURY DEMAND**

The HSA Hospital Plaintiffs demand a trial by jury on all issues so triable.

Khurrum Wahid, Esq.
WAHID VIZCAINO GELLER LLP
2103 Coral Way, Suite 401
Miami, Florida 33145
khurrum@wvmlawfirm.com
khurrum@wvglegal.com
(305)444-4303
(305)444-4302

**__/s/ Khurrum Wahid__**
Counsel for Plaintiff
Florida Bar 178764

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on _______________, a true and correct copy of the foregoing was filed with the Court and to the Clerk of Court via ECF.

**/s/Khurrum Wahid**
Khurrum Wahid, Esq.
WAHID VIZCAINO GELLER
PLLC
2103 Coral Way, Suite 401
Miami, Florida 33145
khurrum@wvmlawfirm.com
khurrum@wvglegal.com
(305)444-4303
(305)444-4302

**__/s/ Khurrum Wahid__**
Counsel for Plaintiff
Florida Bar 178764