UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:26-CV-26005-RUIZ

HSA PGH, LLC d/b/a Palmetto General Hospital; HSA CGH, LLC d/b/a Coral Gables Hospital; HSA FMC, LLC d/b/a Florida Medical Center; HSA NSMC, LLC d/b/a North Shore Medical Center; HSA HH, LLC d/b/a Hialeah Hospital; HSA GLENWOOD, LLC d/b/a Glenwood Regional Medical Center; HSA PORT ARTHUR, LLC d/b/a Medical Center of Southeast Texas; and HSA ST. JOSEPH, LLC d/b/a St. Joseph Medical Center,

Plaintiffs,

vs.

UMR, INC.,

Defendant.
_______________________________________/

**PLAINTIFFS' OPPOSITION TO UMR'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Plaintiffs, HSA PGH, LLC; HSA CGH, LLC; HSA FMC, LLC; HSA NSMC, LLC; HSA HH, LLC; HSA Glenwood, LLC; HSA Port Arthur, LLC; and HSA St. Joseph, LLC (collectively, "Plaintiffs"), by and through undersigned counsel, submit this opposition to Defendant UMR, Inc.'s Motion to Compel Arbitration and Stay Proceedings ("MTC," ECF No. 28), and in support thereof state as follows:

## INTRODUCTION

Defendant UMR, Inc. ("UMR") moves to compel the eight HSA hospital-operating entity Plaintiffs into arbitration under an unsigned Administrative Services Agreement ("ASA") between

UMR and a different company, American Healthcare Systems Corp., Inc. ("AHS"). That contract defines only UMR and AHS as the "Parties," limits arbitration to disputes "between the Parties," and expressly disclaims creating any rights, obligations, or liabilities for anyone else. None of the Plaintiffs signed it, and none is a party to it. (ASA, ECF No. 29-2, at 1, §§ 9, 11.10.)

To attempt to bind non-signatory Plaintiffs to AHS's contract anyway, UMR advances three theories—each refuted by the ASA's text, UMR's own records, or settled law. First, UMR contends that Plaintiffs adopted the ASA by participating in an AHS-sponsored ERISA health plan ("Plan") and funding their own employees' medical claims, even though the ASA itself contemplates claims administration for covered affiliates without making them Parties. Second, UMR claims that a $2 million post-termination transfer by Plaintiffs' parent company, Healthcare Systems of America ("HSA"), accepted UMR's proposal to extend the ASA across both AHS and HSA plans—ignoring that HSA expressly restricted the payment to "HSA Claims and HSA Claims only" before wiring a cent, and UMR later confirmed in writing that no agreement was reached. Third, UMR invokes direct-benefits estoppel, even though Plaintiffs sue to recover their own segregated funds rather than enforce AHS's contract.

UMR bears the threshold burden of proving an agreement to arbitrate binding these Plaintiffs. Because it has not carried that burden, the Court should deny the motion—or, if it finds a genuine factual dispute over formation, order targeted discovery and a summary trial under § 4 of the Federal Arbitration Act ("FAA") before compelling arbitration.

## ARGUMENT

Arbitration is a matter of contract. Before compelling it under the FAA, the Court must determine whether the parties agreed to arbitrate, applying ordinary state-law contract principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995).[1]

### I. UMR Assumes that the HSA Plaintiffs Agreed to Arbitrate Under the ASA and Improperly Shifts to Them the Burden of Disproving That Assumption

Relying on *Dimattina Holdings, LLC v. Steri-Clean, Inc.*, 195 F. Supp. 3d 1285, 1288 (S.D. Fla. 2016), UMR argues that "the burden is on the party opposing arbitration to prove to the court that arbitration is improper." (MTC, ECF No. 28, at 8.) But in *Dimattina*, it was undisputed that the franchisee had entered a franchise agreement containing an arbitration clause, so the court had no occasion to address the burden of proving that an agreement to arbitrate existed. 195 F. Supp. 3d at 1287–92.

Here, by contrast, Plaintiffs dispute that they ever became bound by AHS's ASA, and the law is well settled that UMR bears the burden of establishing that threshold agreement. *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1329–33 (11th Cir. 2016). Although doubts about an arbitration clause's scope are resolved in favor of arbitration, "the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Id.* at 1329 (quotation marks omitted). UMR thus cannot assume that Plaintiffs adopted the ASA and require them to disprove that assumption.

---

[1] UMR invokes New York law based on § 11.3 of the unsigned ASA, while asserting that Florida law is in accord. (MTC at 9–10, ECF No. 28.) A choice-of-law clause in an unexecuted contract cannot itself bind non-signatories to determine whether they ever assented to that contract. Because New York and Florida law both place the threshold burden of proving contract formation on the party seeking to compel arbitration—and because UMR fails under either state's law—the Court need not resolve any choice-of-law question to deny the motion.

## II. Neither the ASA Nor the Parties' Performance Establishes That Plaintiffs Adopted AHS's Arbitration Agreement

UMR seeks to establish Plaintiffs' acceptance of the ASA through its affiliate provisions, Plaintiffs' participation in claims administration, and HSA's post-termination payment. None establishes that Plaintiffs agreed to be bound by AHS's contract.

### *A. The ASA Distinguishes Covered Affiliates from the Parties Required to Arbitrate*

UMR first argues that Plaintiffs became bound by the ASA when HSA was added as a participating affiliate under the AHS-sponsored Plan without executing a separate contract. (MTC at 10–11, ECF No. 28.)

But the ASA distinguishes participation in the Plan from acceptance of the contract. Section 1 of the ASA includes affiliated employers' employees within the definition of Employee, and § 6.6 requires AHS to identify covered affiliates. Yet the preamble identifies UMR and AHS alone as the "Parties," and § 9 limits arbitration to disputes "between the Parties." (ASA, ECF No. 29-2, §§ 1, 6.6, 9.) Those provisions explain why UMR administered Plaintiffs' employees' claims without establishing that Plaintiffs themselves undertook AHS's contractual obligations.

Section 11.10 makes the distinction express: "Nothing in this Agreement confers upon any person other than the Parties and their respective permitted successors or assigns, any rights, remedies, obligations, or liabilities whatsoever." (ASA § 11.10, ECF No. 29-2.) UMR argues that this provision is irrelevant because it does not seek to bind Plaintiffs to arbitration as third-party beneficiaries. (MTC at 14, ECF No. 28.) But the provision disclaims obligations and liabilities as well as rights and remedies. Thus, affiliate coverage alone does not impose the ASA's arbitration obligation on Plaintiffs; UMR must establish that they separately adopted the agreement or otherwise became bound by it.

### *B. UMR's Evidence Establishes Claims Administration and Funding, Not Acceptance of the ASA*

UMR seeks to establish Plaintiffs' acceptance of the ASA from two things: their participation in claims administration and their failure to object when UMR terminated the ASA with AHS. (MTC at 10–11, ECF No. 28.) Plaintiffs do not dispute that they agreed to receive claims-administration services; they dispute that they accepted AHS's ASA as the contract governing those services. Neither category of conduct supplies that missing assent.

1. Providing Eligibility Information and Claims Funding Did Not Make Plaintiffs Parties to AHS's ASA

UMR reasons that Plaintiffs accepted the ASA by submitting employee-eligibility information, funding a claims account, and accepting UMR's services. (MTC at 10–11, ECF No. 28.) To infer contract adoption from conduct, however, the conduct must point to the specific agreement being enforced rather than an arrangement that already explains the parties' actions. Here, the ASA identifies UMR and AHS alone as its Parties while expressly contemplating claims administration for affiliated employers' employees. (ASA at 1, §§ 1, 6.6, ECF No. 29-2.) Supplying eligibility data and funds to pay employees' claims enabled UMR to administer those claims under the Plan; neither act shows that Plaintiffs also assumed the bilateral contractual obligations AHS undertook in its ASA. Nor does UMR's maintenance of a separate HSA claims-funding account show adoption of AHS's contract—it shows only how HSA's funds were segregated and tracked.[2]

UMR's authorities do not bridge that gap because each involved conduct tied directly to the contract at issue. In *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Associates,*

[2] UMR also relies on the superseded complaint's allegation that HSA and UMR agreed to claims administration. (MTC at 11 n.2, ECF No. 28.) The SAC superseded that pleading and controls. In any event, the earlier allegation did not identify AHS's ASA as the agreement governing that relationship.

*LLP*, 6 N.Y.3d 371, 373–74 (2006), a church received an architect's proposed contract, operated under its terms, and sued for breach of that very agreement. In *Integrated Health Services of Green Briar, Inc. v. Lopez-Silvero*, 827 So. 2d 338, 338–39 (Fla. 3d DCA 2002), the very plaintiff seeking to avoid arbitration had signed the agreement containing the arbitration clause. And in *Flores v. Lower East Side Service Center, Inc.*, 4 N.Y.3d 363, 370–71 (2005), a contractor conceded entering the written agreement—whereas Plaintiffs here expressly dispute that AHS's unsigned ASA governed HSA. Equivocal conduct consistent with participating as a covered affiliate is not assent to a third party's contract.

UMR also questions how sophisticated parties would operate without a written agreement. (MTC at 13 n.3, ECF No. 28.) Yet UMR drafted the very agreement that expressly provides for services to affiliates while identifying only UMR and AHS as Parties and disclaiming obligations for anyone else. If UMR intended every covered affiliate to become a contracting party, it could have written that requirement into its ASA or obtained their agreement. Its failure to do so cannot be cured by professing disbelief at the arrangement its own contract describes.

2. Silence After Receiving AHS's June 1 Termination Notice Did Not Establish Acceptance of the ASA

UMR also infers acceptance from Plaintiffs' silence after receiving UMR's June 1, 2026 termination notice, emphasizing that the notice quoted the ASA, went to HSA's chief executive officer and other personnel, and drew no objection that the ASA did not apply. (MTC at 11, ECF No. 28.) Silence in response to a notice terminating *another company's* contract is not assent. The June 1, 2026 notice was addressed to AHS ("American Healthcare Systems Corp Inc., ATTN: Faisal Gill, CEO"), identified AHS alone as "Customer," and announced termination of "the Administrative Services Agreement between UMR, Inc. and American Healthcare Systems Corp

Inc." (June 1, 2026 Termination Notice at 4, ECF No. 29-5.) Non parties to the ASA were not required to object to its termination to preserve the fact that they had never signed or adopted it.

Nor did HSA's receipt of the notice imply that HSA had assumed AHS's contract. Because UMR administered HSA employees' claims under the AHS-sponsored Plan, terminating AHS's agreement threatened to interrupt claims processing for Plaintiffs' employees. HSA had every operational reason to pay attention to a notice threatening to cut off employee claim administration without thereby becoming a Party to AHS's contract.

***C. The August Exchange Does Not Establish That Plaintiffs Accepted the ASA***

UMR alternatively contends that Plaintiffs independently bound themselves to the ASA in August 2026 when HSA wired $2 million for post-termination "run-out" claims processing. (MTC at 12–13, ECF No. 28.) To form a contract under New York law, however, the parties' expressed words and deeds as a whole must manifest mutual assent to the proposed terms. *See Brown Brothers Electrical Contractors, Inc. v. Beam Construction Corp.*, 41 N.Y.2d 397, 399–400 (1977. Far from establishing assent to AHS's ASA, UMR's argument disregards the full exchange, including HSA's express restriction of its funding commitment before transferring the money, and its own contemporaneous communications stating that the parties did not reach an agreement.

First, UMR never obtained an unqualified acceptance of its August 4 run-out offer. UMR's August 4 letter—addressed to both AHS (identified as "Customer") and HSA—proposed processing pre-termination claims across all benefit plans in order of receipt for $2 million per week, stated that "[a]ll terms and conditions of the ASA will continue to apply to the run-out services," and asked the recipients to confirm agreement. (Aug. 4, 2026 Proposal at 2–3, ECF No. 29-7; Aug. 4–5, 2026 Correspondence at 2, ECF No. 29-8.) When HSA's chief executive officer, Faisal Gill, replied that evening that "HSA is committing to paying $2 million per week," UMR's

counsel attempted the next afternoon to convert that statement into an agreement "to be solely responsible for the terms of run-out" and asked for confirmation once the initial $2 million was sent. Gill instead expressly limited HSA's commitment—"Just to be clear the $2 million dollars is for HSA Claims and HSA Claims only." (Aug. 4–5, 2026 Correspondence at 2, ECF No. 29-8.)

Second, UMR has the acceptance argument reversed. HSA expressly limited the payment to "HSA Claims and HSA Claims only" before transferring the $2 million. UMR knew of that restriction, nonetheless accepted the money, and now refuses to return the residual. (Aug. 4–5, 2026 Correspondence at 2, ECF No. 29-8; SAC ¶¶ 47, 50–52.) UMR cannot turn its acceptance and retention of HSA's restricted funds into proof that HSA accepted UMR's broader contractual terms.

Third, omitted from UMR's lengthy factual presentation is any mention of its August 14, 2026 notice bearing the subject line, "Re: Termination Notice of the Administrative Services Agreement between UMR, Inc. and American Healthcare Systems Corp Inc." The notice again identified AHS as "Customer" and expressly stated: "As the parties did not come to agreement regarding the proposed conditions for run-out services, termination is effective as of 8/01/2026. Runout services will not be provided." (Aug. 14, 2026 Termination Notice, attached hereto as Ex. A.) That contemporaneous account cannot be reconciled with UMR's present contention that HSA accepted its August 4 proposal by committing to weekly funding and transferring $2 million on August 6. (MTC at 12–13, ECF No. 28.) This is particularly true since UMR, after receiving the $2m, instituted an effective termination date retroactively to before HSA transferred the $2m—yet UMR kept the monies anyway. UMR now characterizes the exchange as an agreement to ASA terms despite unresolved cross-group funding. Its notice drew no such distinction: after accepting HSA's restricted payment, UMR acknowledged that the proposed run-out conditions had not been

agreed, declined to provide run-out services, and continued to withhold HSA funds while identifying the terminated agreement as one between UMR and AHS.

Finally, UMR cannot salvage its August argument by asserting that its proposal merely restated existing obligations under § 10.1 (continuing ASA terms during run-out) and § 10.3 (survival of § 9). (MTC at 12, ECF No. 28; ASA §§ 10.1, 10.3, ECF No. 29-2.) Those provisions bind entities already bound by the ASA, which defines "the Parties" as UMR and AHS alone. (ASA at 1, §§ 10.1, 10.3, ECF No. 29-2.) Survival clauses extend an existing contract after termination; they cannot bind non-parties who never adopted the contract in the first place.

## III. Direct-Benefit Estoppel Does Not Bind Plaintiffs to an Agreement They Neither Knowingly Exploited Nor Seek to Enforce

Direct-benefit estoppel prevents a nonsignatory from having it both ways—claiming a contract's direct benefits while avoiding its arbitration provision. *Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d 626, 630–35 (2013). Plaintiffs seek no such advantage. They do not sue to enforce AHS's ASA or claim benefits promised under it. They seek an accounting and return of residual funds they provided for their employees' medical claims, after authorized payments and charges are accounted for. (SAC ¶¶ 50–52 & Counts I–IV, ECF No. 24.)

Those funds include the $2 million HSA transferred after expressly limiting its funding commitment in response to UMR's run-out proposal—"for HSA Claims and HSA Claims only." UMR knew of that restriction, accepted the money, and now refuses to return the residual. (Aug. 4–5, 2026 Correspondence at 2, ECF No. 29-8; SAC ¶¶ 47, 50–52, ECF No. 24.) Seeking recovery of money tendered on that restricted basis does not claim a benefit under the broader contractual arrangement UMR proposed.

UMR once again points to its claims administration, maintenance of a funding account, and the termination correspondence as evidence of knowing exploitation. (MTC at 15–16, ECF

No. 28.) But *Belzberg* distinguishes benefits flowing directly from the agreement from benefits arising through a separate relationship. 21 N.Y.3d at 631, 633–35. As explained above, UMR provided services through an affiliate relationship expressly contemplated by the ASA without transforming affiliates into Parties. Describing those services does not establish that Plaintiffs knowingly exploited AHS's contract. Nor do Plaintiffs' claims in this lawsuit depend on enforcing the ASA. Similarly, applying Florida law, the Eleventh Circuit in *Ya Mon Expeditions, LLC v. International Yacht Brokers Ass'n*, No. 25-10140, 2026 U.S. App. LEXIS 16708, at *20–23 (11th Cir. June 10, 2026) (per curiam) (unpublished), rejected estoppel where nonsignatories asserted independent duties rather than contractual benefits.

UMR also argues that because the SAC seeks the residual after HSA claims, fees, and other properly chargeable amounts are accounted for, resolving Plaintiffs' claims necessarily requires construing the ASA's fee, offset, and reconciliation provisions. (MTC at 14–17, ECF No. 28.) But acknowledging that authorized payments and charges must be accounted for does not concede that AHS's ASA determines which charges are authorized. If UMR invokes AHS's contract to justify a disputed fee or offset, it must establish why that contractual authority applies to Plaintiffs. UMR cannot turn its own contractual defense into Plaintiffs' demand for contractual benefits.

## IV. UMR's Remaining Arguments Presuppose an Agreement Binding Plaintiffs, and Any Factual Dispute Over Formation Must Be Resolved Under § 4 of the FAA

UMR's remaining arguments concern the scope of § 9 of the ASA, whether procedural prerequisites are for the arbitrator, whether UMR waived arbitration, and whether § 3 of the FAA requires a stay. (MTC at 16–18, ECF No. 28.) None answers the threshold question whether Plaintiffs became bound by the ASA. The breadth of an arbitration clause does not establish who agreed to it, and rules allocating procedural questions to an arbitrator do not dispense with the court's obligation to determine whether an agreement exists. *See First Option*, 514 U.S. at 943–

45. Likewise, UMR's preservation of any arbitration right does not establish that it possesses such a right against Plaintiffs. Section 3 of the FAA requires a stay only when the dispute is referable to arbitration under a written agreement. Because UMR has not established an agreement binding Plaintiffs, the Court should deny its motion.

The Court should deny UMR's motion because its evidence does not establish an agreement binding Plaintiffs. *See Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1333–34 (11th Cir. 2016) (affirming denial without trial where the movant's evidence was insufficient to create a genuine dispute concerning formation). If the Court instead finds a genuine dispute of material fact concerning Plaintiffs' adoption of the ASA, Plaintiffs request limited discovery directed to that issue, followed by a trial under § 4 of the FAA before arbitration may be compelled.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court deny UMR's Motion to Compel Arbitration and Stay Proceedings (ECF No. 28), or alternatively permit limited discovery and conduct a trial under § 4 of the FAA on whether Plaintiffs agreed or otherwise became bound to arbitrate.

Khurrum Wahid, Esq.
WAHID VIZCAINO GELLER LLP
2103 Coral Way, Suite 401
Miami, Florida 33145
khurrum@wvmlawfirm.com
khurrum@wvglegal.com
(305)444-4303
(305)444-4302

**/s/ Khurrum Wahid**
Counsel for Plaintiff

Florida Bar 178764

Alex John Saiz, Esq.
WAHID VIZCAINO GELLER LLP
2103 Coral Way, Suite 401
Miami, Florida 33145
Alex@wvmlawfirm.com
Alex@wvglegal.com
(305)444-4303
(305)444-4302

**/s/ Alex John Saiz**
Counsel for Plaintiff
Florida Bar: 093011

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 13, 2026, a true and correct copy of the foregoing was filed with the Court and to the Clerk of Court via ECF.

Khurrum Wahid, Esq.
WAHID VIZCAINO GELLER LLP
2103 Coral Way, Suite 401
Miami, Florida 33145
khurrum@wvmlawfirm.com
khurrum@wvglegal.com
(305)444-4303
(305)444-4302

**/s/ Khurrum Wahid**
Counsel for Plaintiff
Florida Bar 178764

Alex John Saiz, Esq.
WAHID VIZCAINO GELLER LLP
2103 Coral Way, Suite 401
Miami, Florida 33145
Alex@wvmlawfirm.com
Alex@wvglegal.com
(305)444-4303

(305)444-4302

**/s/ Alex John Saiz**
Counsel for Plaintiff
Florida Bar: 093011